## E. F. AVERY v. A. J. LAYTON, ET AL.

ERROR TO THE COURT OF COMMON PLEAS OF WYOMING COUNTY.

Argued February 24, 1888—Decided April 16, 1888.

A father and son had been convicted upon an indictment for a conspiracy to cheat and defraud the creditors of the father. In order to obtain their favorable recommendation towards a mitigated sentence, the son gave a bond to the prosecuting creditors to protect them from the claims of the son and an uncle against them for the seizure at their instance and a sale by the sheriff a second time of property which the son and uncle had bought at a prior sheriff's sale as the property of the father.

A nominal sentence having been imposed, judgment was entered upon the bond, but being subsequently opened to allow a defence to be made, the defendant endeavored upon the evidence to sustain the claim that the bond was executed under the influence of representations of the prosecuting creditors and their attorneys that if he did not execute it he would be sentenced to the penitentiary, and that it was therefore void: Held,

1. That the court having fairly and clearly presented the case to the jury, an instruction that if they should find the bond was obtained by duress, or was given in pursuance of an arrangement to turn aside the course of justice, or to prevent the prosecution or punishment of crime it was not binding, was as favorable as the defendant could require.

2. That it was not error to admit evidence that the obligor had brought suit against one of the obligees of the bond to recover damages for the sale to indemnify against which the bond was given, as showing the situation and interest of the obligor in the issue trying.

3. Nor was it error to admit in evidence the judgments, writs of execution and returns, on which the first sale of the father's property had taken place when it was purchased by the son and uncle, as part of the history of the transaction out of which the bond resulted.

Before GORDON, C. J., PAXSON, STERRETT, GREEN and WILLIAMS, JJ.; TRUNKEY and CLARK, JJ., absent.

No. 139 January Term 1888, Sup. Ct.; court below, No. 183 April Term 1878, C. P.

On February 23, 1878, judgment had been entered in the Court of Common Pleas of Wyoming county in favor of C. L. Lafferty, The First National Bank of Towanda, Samuel Howard, Charles Hawley and A. J. Layton, the latter being

the sheriff of Bradford county, Pa., against E. F. Avery, upon a penal bond executed by said Avery in the sum of $1,500, dated February 22, 1878, reciting that upon certain executions issued out of the Court of Common Pleas of Bradford county the said sheriff had levied upon certain personal property alleged to be the property of Cyrus Avery and sold the same, on being indemnified by the other obligees, and that one A. R. Brown and said E. F. Avery claimed said property at the said sale thereof, and conditioned that the said E. F. Avery would well and truly indemnify and save harmless the obligees, etc., from every and all manner of suits, actions, costs, charges, claims and demands of said A. R. Brown and E. F. Avery or either of them for or by reason of said levy and sale.

On August 13, 1883, a scire facias having issued to revive the foregoing judgment, proceedings were begun to open it to enable a defence to be made, which resulted in the awarding of an issue on August 14, 1884, the bond to stand for a declaration, the defendant to plead the general issue and payment with leave, etc.

At the trial on November 16, 1885, before ELWELL, P. J., 26th district, holding special term, the testimony showed that in March, 1877, one J. P. Kirby issued execution upon a judgment he held against Cyrus Avery, a merchant in Bradford county, father of E. F. Avery, a dentist of Wyoming county. This judgment and execution were assigned by the plaintiff therein to E. F. Avery and his uncle, A. R. Brown. There was another execution in the sheriff's hands, and also two writs of testatum fieri facias from the Court of Common Pleas of Wyoming county, in favor of E. F. Avery against Cyrus Avery. The personal property of Cyrus Avery was all sold upon these writs, purchased by E. F. Avery and A. R. Brown, and the proceeds applied to the said executions. Subsequently, C. S. Lafferty, The First National Bank of Tamaqua, Samuel Howard and Charles Hawley issued executions upon judgments in their favor against Cyrus Avery, levied upon and sold the same property previously sold to E. F. Avery and A. R. Brown, who attended the sale and gave notice of their claim of ownership.

On August 7, 1877, after the foregoing sales, proceedings were begun in Bradford county against Cyrus Avery by war-

rant of arrest under the act of 1842, eventually resulting in his discharge by the court upon his giving bond to proceed to apply for the benefit of the insolvent laws. While these proceedings under the act of 1842 were pending against Cyrus Avery, both Cyrus Avery and E. F. Avery were arrested and jointly indicted in the Quarter Sessions of Bradford county, charged with a conspiracy to defraud the creditors of Cyrus Avery. On February 9, 1878, the defendants were tried and found guilty upon said indictment, but sentence was postponed till February 23, 1878. On the morning of said date the bond in controversy, dated the day before, was executed by E. F. Avery.

The defendant in the issue introduced evidence claimed to establish, that after said conviction the plaintiffs agreed with him that upon payment by the latter of the plaintiffs' unsecured claims against Cyrus Avery and the giving of a release to plaintiffs of all damages they might be liable to by reason of the second sheriff's sale of said personal property, the plaintiffs would appear in court and secure a nominal sentence upon the indictment; that the release was drawn up, but Brown refused to sign it; that the defendant, however, paid or secured all the unsecured claims of the plaintiffs against Cyrus Avery, took assignments of a portion of them, and paid $200 to the plaintiff's counsel for services rendered in the prosecution of the indictment; that, on the morning of February 23, 1878, the day of sentence, the plaintiffs presented to defendant the bond in controversy, dated and drawn the day before, and said that A. R. Brown might cause them trouble and they would not make any statement to secure a nominal sentence unless the defendant would sign the bond; that when the defendant refused, the plaintiffs said the law would then have to take its course, and when the defendant asked what that was, the plaintiffs replied that it was a penitentiary offence; that immediately thereafter the defendant under excitement and duress signed the bond, and went into court with his father Charles Avery when they were sentenced upon the indictment, each to a fine of $5 and costs; wherefore it was claimed that said bond was void.

On the part of the plaintiffs it was claimed from the testimony that the negotiations resulting in the giving of the bond

were first suggested by the defendant, that the release referred to was to be the basis of a recommendation to clemency, and that when Brown refused to sign the release, the bond of indemnity was given in lieu thereof.

E. F. Avery, the defendant, having testified, as before stated, in his own behalf, on his cross-examination the plaintiffs offered:

The plaintiffs' counsel now propose to ask the witness whether he has not brought a suit against the sheriff of Bradford county for the sale of the property.

. The defendant's counsel object: (1) that in chief they only examined the witness as to what took place at the time the bond was signed and the question proposed is not an inquiry about anything to which the attention of the witness was called in chief and therefore is not cross-examination; (2) the defence to the bond in suit is that the consideration was illegal and it makes no difference whether the witness had brought a suit against the sheriff of Bradford county or whether he has not; the proposed evidence is therefore immaterial and irrelevant.

By the court: I do not think this would be evidence in any other respect than as showing the situation of the witness, that he has brought suit against one of the plaintiffs or is in litigation with him. He is making a claim, has a suit, he is witness and you may ask him his relation to the parties. The evidence is admitted.[1]

Under this admission the defendant testified that suit had been brought in the Court of Common Pleas in Bradford county against Sheriff Layton in the name of Brown and Avery, and that the suit was pending untried.

In the plaintiffs' rebuttal case :

The plaintiffs' counsel offer in evidence judgment in Wyoming Common Pleas, No. 408 April term, 1877, E. F. Avery against Cyrus Avery, together with the testatum fieri facias and the return. Also, judgment No. 409, with the note, testatum fieri facias from Wyoming county, and the return of the sheriff upon it showing most of the goods were sold to E. F. Avery and A. R. Brown: For the purpose of showing that these are the two notes and judgments alleged in the indictment as being fraudulent and made in conspiracy between

Cyrus Avery and Edward F. Avery for the purpose of defrauding the creditors of Cyrus Avery; to identify these judgments and notes as the ones named in the indictment.

The defendant's counsel object to the evidence offered: (1) that it is immaterial and irrelevant; (2) that it is not rebutting to any testimony given by the defendant to the defence to this bond.

By the court: We will admit this evidence. It is not for the purpose of going back and showing a conspiracy, but relating to matter cited in the indictment and in the bond also. I think it is admissible for the purpose of showing that there was something to indemnify against, and whether the indemnity was a valid one or not is another question. The evidence is admitted.[2]

The court, ELWELL, P. J., instructed the jury and answered the points presented as follows:

As the case stands to-day the only object is to ascertain whether the bond when given was a valid obligation, and the verdict which this jury is to render is upon that point. You have nothing to say in regard to any amount which may be recovered upon the bond, if the plaintiffs are entitled to recover, but to pass upon the subject simply whether these plaintiffs have a right to hold that bond in order to be indemnified against any suit which may be brought against them in trespass. Therefore, the verdict will simply be in favor of the plaintiffs if the jury find it was a valid one, and in favor of the defendant if they find it was invalid.

The history of the case, as we learn from the evidence, is that at April term, 1877, E. F. Avery entered two judgments against his father, Cyrus Avery, for the amounts which you have heard mentioned here; one judgment for fifteen hundred dollars, and one for two thousand dollars with some payments indorsed upon it. On the judgments entered upon those notes, writs were issued from this court to Bradford county and placed in the hands of the sheriff to levy upon the property, a list of which has been read in your hearing, and which was sold some time in the spring of 1877. [These plaintiffs, being creditors of Cyrus Avery, alleged that those judgments were given for a fraudulent purpose; that they were not bona fide; that

it was a transaction between father and son; and that the father having become embarrassed in his business transactions, in order to make a feather bed to rest himself upon, got his son to agree to cover up the property so that the creditors could not reach it.][3] Under that allegation these plaintiffs issued an execution against Cyrus Avery, alleging that because the judgments of the son were fraudulent they were therefore worthless and did not stand in the way of creditors levying upon the property which had been bought in on those fraudulent judgments. The purchasers at that sale were E. F. Avery and A. R. Brown. Mr. Brown was a relative, and whether he would be affected by the fraud of the father and son is not very important here, because he is not a party to this suit. [These plaintiffs issued their execution, levied upon that property and sold it to different parties at sheriff's sale; other persons became purchasers and the moneys received from that sale were appropriated by the sheriff upon other claims, so that a portion only, I believe, of the executions were paid by those sales.][4] Now, that left the sheriff who made that sale, and the plaintiffs who procured him to make it, liable to A. R. Brown and E. F. Avery in an action of trespass, if that was a bona fide sale to them of the property of Cyrus Avery. It was fair to presume that Brown and E. F. Avery were making a claim, for the property was sold on the judgments of E. F. Avery and they had become the purchasers.

Matters were in that situation when these creditors instituted a proceeding against Cyrus Avery under the act of 1842. The title of that act is " An act to abolish imprisonment for debt and punish fraudulent debtors." Such proceedings were had that a warrant of arrest was issued by his Honor, Judge Morrow, of Bradford county, and Cyrus Avery was arrested and brought before him on the charge that he, Avery, was assigning, transferring and making way with his property fraudulently and to cheat his creditors. The judge heard that matter, according to what appears here, at considerable length, occupying several days, and a final adjudication was made by him, if I have the dates right, on August 17th, holding Cyrus Avery to bail as provided by that law. . . . . .

Subsequent to that order a complaint was made against Cyrus Avery and E. F. Avery which culminated in the indict-

ment, which has been read in your hearing, against them in the Quarter Sessions of Bradford county. And, without following it particularly by date, it came on for trial on the 6th day of February, 1878. The trial occupied some two or three days and a verdict was rendered on the 9th day of that month finding the defendants guilty in manner and form as they stood indicted, to wit: that they had conspired together by agreement, to cover up the property of Cyrus Avery and otherwise conceal it for the purpose of defrauding his creditors, for that is what is meant by conspiracy. . . . .

Of course, the adjudication of that court is conclusive upon the fact that these parties conspired together. It has not been contradicted collaterally nor has it been attempted to be controverted in this action. Thus far there is no contradiction in the case.

We come now in the regular order of events to consider what next occurred after they were convicted. [You will perceive that there was a lapse of time from the 9th to the 23d of February, within which it is testified by some of the witnesses there was some talk in regard to the settlement of the claims against Cyrus Avery, and that there was a release to be signed by E. F. Avery and Brown prepared, whether upon the Thursday of the week of the sentence or some other day in that week is not definitely fixed by the evidence, nor is it very material, further than this, that before anything was said, so far as the evidence shows, about what was to be done with the criminal prosecution, there came up this question of getting a release from Avery and Brown.][5] Mr. Avery says he recollects very little about the release business and it will be for you to say whether he did not take that release, go to Brown and endeavor to get it signed by him, and whether it was not understood, at the time the release was prepared, that the signature to that would be a settlement of the matters, upon his paying the claims of persons which had not been satisfied by this sheriff's sale. There were some of these creditors that were not execution creditors and they received nothing upon those sales, so that the release did not affect them or take them into consideration at all. Mr. Brown declined to sign the release. The plaintiffs allege that it was then suggested that Mr. Avery should give a bond of indemnity to those plaint-

iffs who sold the property the second time, and they also allege that this bond was given in lieu of the release which Avery had supposed he could procure but did not.

The defendant alleges that the bond was procured from him under these circumstances : He had been convicted and not yet sentenced. There was some talk about adjusting the debts, and he says the first he heard in regard to the bond was on Saturday, the day when they were to be sentenced. The bond was then produced and he objected to signing it, and he testifies that he was told in substance that as the release was not procured the proceedings must go on and the law take its course, unless he would sign the bond ; that if he did execute the bond the sentence would be light, "nominal," as it was called; and, upon inquiring what "nominal" meant, he was told that five or ten dollars and the costs would be all, and that he was then told unless he did sign it the sentence might be a penitentiary offence. On the strength of that he signed the bond, and on the way to the court house he met Mr. Foyle, who also held a claim; that Foyle stated that some of the counsel said his claim must come in; that he then gave his note for that and also for the other claims of the plaintiffs not embraced in those executions that had been satisfied by the sale. . . . .

Under Mr. Avery's testimony it is argued that advantage was taken of his situation, that his counsel was not present and that he was led on to signing the bond by wrongful representations or by that which amounted to a threat. On the other side there is evidence, all of which you will no doubt distinctly remember, that Mr. Elsbree, who seemed to be rather the protecting counsel of Mr. Avery, said, when the propositions for settlement by giving a bond and paying the debt, etc., were made, "if the debts are satisfied we will run our risk as to the sentence,". . . . .

Now, in regard to the consideration of the bond aside from the matter of getting the sentence reduced. The man who conspires with another to defraud a third person is liable in a twofold manner. The offence of conspiring is a public one; it is against the commonwealth; it is detrimental to the interests of society, and persons who put their heads together to do a wrong the law punishes criminally.

But if a private individual is injured in any manner by the conspiracy he has his remedy by a civil action. Although the commonwealth may have asserted her claim upon the party for punishment because of the offence, the private right remains still to be redressed. It would be intolerable that because a man was indicted and punished the individual whose property is taken and whose interest is jeopardized should go without compensation. Therefore, the law allows private injuries to be compensated for by the party who has caused them to be committed. So that, if by the conspiracy between Cyrus Avery and his father the plaintiffs in this case were induced to make costs in endeavoring to get their pay, and were misled by the appearance of fraud, it would be competent for E. F. Avery to secure them against any loss that might happen because of any attempt of his to defraud them. He would be doing nothing more than what was his right and his duty to the other party. [So that if this bond was given for the purpose of making good any loss which these parties might sustain because of the conspiracy, so far as that is concerned, it would be a good consideration.] [6] But, gentlemen, even such a bond as that, for such a purpose, could not be obtained and held to be valid if the party receiving it as part of the consideration entered into an arrangement to thwart the law and the commonwealth in its operations against the man. So, where there is a criminal prosecution and the party injured agrees to stop that prosecution, not to appear or in any way affect it, for a compensation or for the purpose of getting what he claims to be his due, the law holds an instrument, obtained under such circumstances, invalid. If the object and purpose in taking an instrument in writing, bond, obligation, note or anything else, be to thwart the cause of justice, and turn it aside from its proper channel, it would be invalid because illegal, and the object and purpose would be contrary to the policy of the law. Nothing should transpire to prevent justice being administered. [I can very well understand that there would be a difference between that case, where parties stopped a prosecution where it had been commenced, dropped it on receiving compensation, or on receiving an obligation that was still executory, and where he has followed it through to the end of the law and obtained a conviction. There he has so

far performed his duty to the public. If a public wrong is committed it should be prosecuted not only for the punishment of the offender, but for the protection of the community against others in like cases offending. And where a party has prosecuted a case to the end, I don't think it would be sufficient of itself to defeat an obligation that he might take by his saying to the court, the party has satisfied me.] [7] If a man obtain money from another by false pretences, is prosecuted for it and convicted and returns and pays the party for it, no law forbids the statement of such fact to the court. In cases of assault and battery and many other cases of that nature where a private wrong is connected with it, the prosecutor may say to the court, the party has satisfied me in the case, and let the court dispose of the matter as it may think justice to the public requires. If that is wrong it is often done in courts and, so far as I know, has never been considered a violation of law on the part of the court or as wrong on the part of the prosecutor. What I consider to be wrong, would be, if a party was compelled to do an act which he would not otherwise have done except for a threat on the one hand and an implied promise on the other; a threat that sentence should be severe if he did not settle with him, and a promise it should be light if he did settle with him. When the thumb-screw of a prosecution is made use of for the purpose of wringing money from a man or wringing an obligation from him, and thus imposing what is called duress upon his mind and causing him to act through fear, such an obligation as that might be, and probably would be, void, while a voluntary one given by a party would be good, although he had been prosecuted and convicted. . . . .

Then the notes that were taken by Mr. Kinney were brought here and sold to Mr. Bunnell and the defendant said to Mr. Bunnell, according to Mr. Bunnell's testimony, that they were all right. This was on the same day when these obligations were given. If the bond was void, obtained by duress or by improper statements, it could not be confirmed, no matter what defendant may have said to Mr. Bunnell about it or to anybody else. If it was fraudulent when it was made, it was always fraudulent and remains so still, no matter what he might say. [If, however, it was given, not for the purpose of

affecting the legal proceedings against the defendant, but for the purpose of squaring things up and compensating the plaintiffs for the conspiracy, then this evidence can be made use of for the purpose of corroborating the claim on the part of the plaintiffs; ] [8] that after the business was done the defendant had said as to this part it was all right. If the bond was invalid and void because of the principle I have stated, then this evidence would not amount to any confirmation of the bond.

The counsel on both sides have presented points which the law requires me to answer, and in doing so I will necessarily repeat a part of what I have already said. But the law requires me to charge upon points, and I will do so. The counsel for the plaintiffs ask me to charge:

1. That where a private injury arises from a conspiracy of two or more persons, any such person or persons or conspirators are liable jointly and respectively in a civil action for all damages that such person or persons have sustained by reason of such conspiracy, and the same may be collected by law.

Answer: This point is affirmed. It is substantially what I have charged you, and I again say that E. F. Avery and Cyrus Avery were jointly and separately liable to these plaintiffs for all damages that they sustained as well as damages that other persons may have sustained by reason of the conspiracy, and without any criminal prosecution they could have maintained an action to recover their damages for the conspiracy. [9]

4. If the defendant, E. F. Avery, voluntarily gave the bond in suit to the plaintiffs in attempting to make restitution for the injuries they, the plaintiffs, had sustained or might sustain by reason of the conspiracy of the defendant and Cyrus Avery, and in consideration of the dismissal of the proceedings against Cyrus Avery under the act of 1842, as well as the assignment by the creditors of Cyrus Avery of their claims to E. F. Avery, defendant, and in settlement of any claims for damages by reason of such conspiracy, or for any of these purposes, then the bond is valid and is given upon a sufficient consideration and can be enforced.

Answer: If the matters recited in this point shall be found by the jury to be the only considerations of the bond, the law is as therein stated. [10]

The counsel for defendant asks me to charge:

1. That the employment of criminal process to obtain civil redress is a misuse of the process and a fraud upon the law, and securities procured under the pressure of such a proceeding by the party promoting it cannot be enforced.

Answer: This point is correct as a general statement of law and is applicable to this case, only providing the jury shall find a misuse of criminal process to obtain the bond in question.

2. It is an elementary principle that an agreement founded on a false conception is a nullity in respect to the party who misconceived, because he assented to it, not absolutely but on a condition not verified by the event; and that if the jury believe from the evidence that the defendant, from what took place at the giving of the bond and immediately prior thereto, believed that his sentence would be merely nominal and was induced, by reason of that belief, to sign the bond, the verdict must be for the defendant.

Answer: I say to you that the first part of this point is correct as an abstract statement of law. I decline to affirm the latter part of the point, unless the jury believe that the counsel for the plaintiffs in the conspiracy case induced the defendant to execute the bond in question by stating to him that the sentence would be merely nominal if the bond were signed, but might be a term in the penitentiary if the bond was not signed. The mere fact that the settlement was made shortly before the sentence was to be pronounced, would not of itself be sufficient to vitiate the bond. Upon another point, part of what is embraced in this will be explained. [11]

4. If the jurors believe that the defendant was induced to believe by the words, acts or conduct of the plaintiffs, or those representing them, that if he signed the bond his sentence would be a nominal one, and that upon inquiry he was told "nominal" meant a fine of five or ten dollars and costs, and that if he did not sign the bond the law would have to take its course and that the offence for which he was convicted was a penitentiary offence, he under such circumstances was under duress and the bond would be void.

Answer: This point is affirmed, provided the jury shall find that the words of the plaintiffs, or their agents, were to the

effect that the sentence would be nominal if he signed the bond, but if he did not that the law must take its course and that the punishment might be a penitentiary punishment. If the jury find all that upon the testimony that has been given here, then I affirm that position, otherwise the point is not affirmed. If, when the defendant was refusing to sign the bond, he was induced to do it by a statement that he would go to the penitentiary if he did not sign it and the sentence of the court would be merely a nominal one if he did, and upon the strength of that he was induced to sign the bond, the bond would be void by the policy of the law. I have already charged you upon the question as to what did occur at that time and referred to the testimony that has been given in reference to it. Of that you are to be the judges. [12]

The verdict of the jury was in favor of the plaintiffs. A motion for a new trial having been refused, on June 17, 1886, judgment was entered upon the verdict, when the defendant took this writ, assigning as error:

1, 2. The admission of plaintiffs' offers. [1] [2]

3–8. The parts of the charge embraced in [ ] [3 to 8]

9, 10. The answers to the plaintiffs' points. [9] [10]

11, 12. The answers to the defendant's points. [11] [12]

*Mr. James W. Piatt* and *Mr. D. C. Dewitt* (with him *Messrs. Ross & Dersheimer*), for the plaintiff in error :

1. The issue was solely as to the execution and validity of the bond; there was no question as to the breach of it. The evidence of the suit against the sheriff of Bradford county was of a suit brought long after the bond was given. The fact of another suit with one of the parties to the issue could throw no light on the giving of the bond. Moreover, under the second assignment of error, the offer was not to show that the bond was given to indemnify against the judgments offered in evidence, nor was the admission made good by a subsequent offer or admission of such evidence. It was not in rebuttal of anything offered by the defendant, and had nothing to do with the giving of the bond. So, in an examination of the evidence, there will not be found a word or syllable showing that the consideration of the bond or the negotiations of the parties

was for the purpose of compensating the plaintiffs for any damages sustained by reason of any conspiracy. It is error to submit questions of fact which are not in evidence. Stouffer v. Latshaw, 2 W. 165; Evans v. Mengel, 6 W. 72; Hannay v. Stewart, 6 W. 487; Evans v. Mengel, 1 Pa. 68; Moore v. Patterson, 28 Pa. 513.

2. The consideration of the bond was not anything growing out of the proceedings against Cyrus Avery under the act of 1842, for he had been discharged in December, 1877; nor the assignments of debts for which Cyrus Avery was arrested, for E. F. Avery had already paid these debts and taken the assignments before he signed the bond. The only consideration was the hope of obtaining a modified sentence and the fear of the "law taking its course." After conviction the defendant would undoubtedly feel himself more in the power of the prosecutors than before. The distinction, therefore, made by the court as to the time when the bond was given, whether before or after conviction, was both erroneous and prejudicial.

3. The bond having been executed through fear of imprisonment, it was as clearly void as though procured by duress of imprisonment: Miller v. Miller, 68 Pa. 493; Work's App., 59 Pa. 448; Brown v. Pearce, 7 Wall. 214; Hatter v. Greenlee, 26 Amer. D. 374, n.; Forshay v. Ferguson, 5 Hill 156; Fellows v. School Dist., 39 Me. 559; Baker v. Morton, 12 Wall. 158; United States v. Huckabee, 16 Wall. 431; Rodich v. Hutchins, 5 Otto 213; Central Bank v. Copeland, 18 Md. 305; 6 Wait, Act. A. D., 641, 650, 652, 664. It is elementary law that an agreement in consideration of stifling or compounding a criminal prosecution, or proceedings for a felony or a misdemeanor of a public nature, is void: Riddle v. Hall, 99 Pa. 120; Bredin's App., 92 Pa. 241; Ham v. Smith, 87 Pa. 65; National Bank v. Kirk, 90 Pa. 49; Work's App., 59 Pa. 444; Morris Run Coal Co. v. Barclay Coal Co., 68 Pa. 188; Ormerod v. Dearman, 100 Pa. 564; Conmey v. Macfarlane, 97 Pa. 362.

*Mr. W. T. Davies* (with him *Mr. L. M. Hall, Mr. W. E. Little* and *Mr. H. N. Williams*), for the defendants in error:

Relied upon the opinion of the court below refusing the motion for a new trial.

OPINION, MR. JUSTICE WILLIAMS:

The issue in this case was framed in order to determine the validity of a bond given by Avery to the defendants in error upon which judgment had been regularly entered in the Common Pleas of Wyoming county. The allegation of Avery was that the bond had been obtained from him by duress. The evidence given on the trial shows that the obligor and Cyrus Avery, his father, had been indicted in the Quarter Sessions of Bradford county for conspiring to cheat and defraud the creditors of Cyrus Avery, and that upon a trial before a jury they had been convicted. The verdict was rendered against them on the 9th February, 1878, and the sentence was postponed until the 23d day of the same month.

In the interval, E. F. Avery paid or secured the several creditors of Cyrus Avery against whom it was alleged the conspiracy was directed, and gave the bond in controversy. The purpose of the bond was to protect the obligees from the claims of E. F. Avery and one A. R. Brown against them for the seizure and sale of personal property which Avery and Brown had bought at sheriff's sale as the property of Cyrus Avery, and which the obligees had again levied on and sold as the property of the same defendant, notwithstanding notice of the title of E. F. Avery and Brown. The proceeds of such second sale having gone in part payment of the debts of Cyrus Avery which E. F. Avery was paying or securing at this time, the bond was given to protect the creditors at whose instance the sale was made, and close out the prospect for further litigation. On the 23d February, 1878, when the defendants were called for sentence, the court was made aware of what Avery had done in the premises, and thereupon sentenced the defendants to pay a fine of five dollars and the costs of prosecution.

On the trial of this issue E. F. Avery insisted that he executed the bond under the influence of representations made to him by the creditors and their attorneys, that if he did not do so he would be sentenced to the penitentiary, while if he executed the bond his sentence would be a nominal one. The defendants in error denied that the bond was executed under duress, and alleged on the contrary that the overtures which resulted in the settlement of their debts and the execution of

the bond were made by Avery; that they assigned to him the
several claims against his father which he paid or secured;
and that they made no threats or promises to induce the exe-
cution of the bond by him except a promise that the court
should be advised of whatever he might do for their protec-
tion.

Here was a plain question of fact for the decision of the
jury. It was fairly and clearly presented to them by the
court. They were instructed, if they should find from the
evidence that the bond was obtained by duress, or was given
in pursuance of an arrangement to turn aside the course of
justice, or to prevent the prosecution or punishment of crime,
it was not binding, and their verdict should be in favor of the
defendant in the issue. This was as favorable an instruction
as the defendant was entitled to ask. His contention is rather,
as it seems to us, with the jury than with the court, for the
verdict shows that they gave credit to the testimony on behalf
of the obligees and rejected his version of the transaction.
They found that the bond was not executed under duress, that
it was not intended to prevent the due administration of the
criminal law, but was given voluntarily, for the purpose of
making reparation for the offence of which he had been found
guilty. We cannot see that they were misled by the learned
judge in his charge either as to the evidence they were to
consider, or the rules of law by which they were to be gov-
erned.

The admission of the offer to show that E. F. Avery had
brought a suit against the sheriff to recover damages for the
sale to indemnify against which this bond was given, was
proper for the purpose of showing the situation and interest
of E. F. Avery in the issue trying. The admission of the evi-
dence which is the subject of the second assignment, was
proper for the same reason and because it was part of the his-
tory of the transaction out of which the giving of the bond in
suit resulted.

The language of the learned judge complained of in the
third assignment, was not his own characterization of the con-
duct of the father and son, but a statement of what the credi-
tors of Cyrus Avery, the plaintiffs in the issue, alleged against
him and E. F. Avery, his son. The statement in the charge

to which exception is taken in the fourth assignment of error, was not strictly accurate, but it was not material to the question on which the case evidently turned. The real contest was over the circumstances connected with the execution and delivery of the bond; upon this subject the charge was correct both in its recitals of the evidence and its instructions. None of the assignments of error is sustained.

The judgment is therefore affirmed.